1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John Brosnan
535 Appian Way #21281
El Sobrante, CA 94803
johnbrosnanlegal@gmail.com
(510) 417-8302



**FILED**

FEB 1 2 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

2:18-CV-322 MCE AC PS

JOHN BROSNAN,

    Plaintiff,

v.

XAVIER BECERRA, in his official capacity as
ATTORNEY GENERAL OF CALIFORNIA;
STATE OF CALIFORNIA AND DOES 1-99,

    Defendants.

Case No.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

## I. **INTRODUCTION**

1.    Plaintiff John Brosnan, brings this action against Defendants the State of California and the California Attorney General Xavier Becerra, to have the Immigrant Worker Protection Act ("IWPA") declared unconstitutional and to enjoin its enforcement.

2.    California Governor Jerry Brown signed the Immigrant Worker Protection Act (AB 450), which restricts public and private employers in California from admitting immigration inspectors to the workplace without a judicial warrant. It also requires employers to notify their employees before and after certain immigration inspections take place. The new law, which adds Sections 7285.1, 7285.2, and 7285.3 to the California Government Code, and Sections 90.2 and 1019.2 to the California Labor Code, took effect on January 1, 2018.

3.    The U.S. Immigration and Customs Enforcement's ("ICE") plans to increase enforcement actions under the Immigration Reform and Control Act ("IRCA"), which includes

criminal and civil penalties for employers who knowingly employ unauthorized workers; the IWPA seeks to protect foreign workers from unfair immigration-related practices, potentially causing problems for employers who must comply with federal and state laws.

**4.** Unless required by Federal law, the IWPA prohibits California employers from allowing immigration enforcement agents to enter any nonpublic areas of a workplace without a judicial warrant. However, an employer may permit an agent to enter a nonpublic area (where employees are not present) for purposes of verifying whether the agent has a judicial warrant. The law does not define "immigration enforcement agents" but presumably includes ICE agents, Fraud Detection and National Security ("FDNS") inspectors, and Department of Labor ("DOL") auditors, as well as officers from other federal agencies who conduct enforcement actions that fall under the IWPA. Employer site visits are often conducted by U.S. Citizenship and Immigration Services ("USCIS") Officers who may also fall under the purview of the IWPA, potentially creating problems for employers who may face USCIS visa petition denials or revocations for foreign workers if they block site visits under the IWPA.

**5.** On or about January 18, 2018, California Attorney General Xavier Becerra, informed the public that the office of the Attorney General of the State of California will prosecute any private business that becomes an accessory to federal immigration authorities as federal immigration authorities seek to enforce immigration laws that have existed for years.

**6.** On January 18, 2018, Xavier Becerra, at a press conference expressly charged the public in his official capacity as Attorney General of the State of California by stating the following regarding any employer who cooperates with federal immigration authorities:

> "It's important, given these rumors that are out there, to let people know –
> more specifically today, employers – that if they voluntarily start giving up
> information about their employees or access to their employees in ways that
> contradict our new California laws, they subject themselves to actions by my
> office," state Attorney General Xavier Becerra said at a news conference. "We
> will prosecute those who violate the law."

## II.  JURISDICTION AND VENUE

**7.** This Court has federal question jurisdiction because this case arises out of violation of federal law.

**8.** Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside within the judicial district of this court.

## II. PARTIES

**9.** Plaintiff John Brosnan ("Brosnan") is a resident of California.

**10.** Defendant State of California ("California") is the State of California.

**11.** Defendant California Attorney General Xavier Becerra ("Becerra") is the Attorney General of the State of California and is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. He is sued in his official capacity.

**12.** Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was, at all times herein mentioned, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship. Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants.

**13.** The true names and capacities of Defendants named herein as Does 1 through 99, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore sues said Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiff will amend this Complaint to show such true names and capacities of Does 1 through 99, inclusive, when they have been determined.

## IV. FACTUAL ALLEGATIONS

### A. The Supremacy Clause

**14.** Article VI, Paragraph 2 of the U.S. Constitution is commonly referred to as the Supremacy Clause, it establishes that the federal constitution, and federal law generally, take precedence over state laws, and even state constitutions. It prohibits states from interfering with the federal government's exercise of its constitutional powers, and from assuming any functions that are exclusively entrusted to the federal government.

**15.** The Supremacy Clause of the United States Constitution (Article VI, Clause 2) establishes that the Constitution, federal laws made pursuant to it, and treaties made under its

1   authority, constitute the supreme law of the land and State laws are subordinate to federal law.

2   **B. McCulloch V. Maryland**

3   **16.**   *McCulloch v. Maryland*, 17 U.S. 316 (1819), was a landmark decision by the

4   Supreme Court of the United States. The state of Maryland had attempted to impede operation of

5   a branch of the Second Bank of the United States by imposing a tax on all notes of banks not

6   chartered in Maryland. Though the law, by its language, was generally applicable to all banks not

7   chartered in Maryland, the Second Bank of the United States was the only out-of-state bank then

8   existing in Maryland, and the law was recognized in the court's opinion as having specifically

9   targeted the Bank of the United States. The Court invoked the Necessary and Proper Clause of

10  the Constitution, which allowed the Federal government to pass laws not expressly provided for

11  in the Constitution's list of express powers, provided those laws are in useful furtherance of the

12  express powers of Congress under the Constitution.

13  **17.**   *McCulloch* established two important principles in constitutional law. First, the

14  Constitution grants to Congress the implied powers for implementing the Constitution's express

15  powers, in order to create a functional national government. Second, state action may not impede

16  valid constitutional exercises of power by the Federal government.

17  **18.**   The IWPA is impeding the valid exercise of constitutional exercises of power by

18  the Federal government and places Plaintiff in the middle of the Constitutional conflict in order

19  to achieve its own political objectives and thereby creating a situation where Plaintiff can be

20  prosecuted for either complying with federal law or complying with the IWPA.

21  **C.   Immigrant Worker Protection Act ("IWPA")**

22  **19.**   The IWPA is embodied within the California Government Code ("CGC") in

23  section 7285, a copy of CGC § 7285 is attached as Exhibit 2.

24  **20.**   CGC § 7285.1(a) states:

25      Except as otherwise required by federal law, an employer, or a person acting
        on behalf of the employer, shall not provide voluntary consent to an
26      immigration enforcement agent to enter any nonpublic areas of a place of
        labor. This section does not apply if the immigration enforcement agent
27      provides a judicial warrant.

28

**21.**   CGC § 7285.1(a) fails to define "nonpublic area of a place of labor".

**22.**   CGC § 7285.1(a) fails to define "place of labor".

**23.**   CGC § 7285.1(a) is vague in that a "nonpublic area of a place of labor" or "place of labor" are very subjective terms.

**24.**   CGC § 7285.1(b) states:

> An employer who violates subdivision (a) shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. If a court finds that an immigration enforcement agent was permitted to enter a nonpublic area of a place of labor without the consent of the employer or other person in control of the place of labor, the civil penalty shall not apply. "Violation" means each incident when it is found that subdivision (a) was violated without reference to the number of employees, the number of immigration enforcement agents involved in the incident, or the number of locations affected in a day.

**25.**   CGC § 7285.1(b) fails to define the term "permitted".

**26.**   The IWPA is vague in many ways and additionally does not provide any protection for Plaintiff if Plaintiff is arrested by federal authorities if Plaintiff attempts to comply with the IWPA.

**27.**   It is unreasonable for Plaintiff to be placed in the middle of a struggle between state and federal authorities.

**D.   Immigration And Customs Enforcement**

**28.**   Immigration and Customs Enforcement ("ICE") periodically conducts sweeps of businesses in the State of California in order to verify the immigration status of employees. Typically, when ICE arrives to conduct a sweep, ICE arrives with several heavily armed ICE agents acting under federal law. ICE will then contact the employer or person in charge and can ask for any type of information ICE deems relevant.

**29.**   According to the IWPA Plaintiff is required to confront the heavily armed agents of ICE and refuse to cooperate.

**30.**   Plaintiff contacted the Office of the Attorney General of California to ask what protection would be provided to Plaintiff if Plaintiff is arrested by ICE because of Plaintiff's compliance with the IWPA and was told that the Office of the Attorney General of California

1  would provide no protection or assistance and that Plaintiff would need to hire an attorney at

2  Plaintiff's expense to deal with any federal charges brought against Plaintiff.

3  **E.   Federal Agents besides ICE**

4  **31.**    The law does not define "immigration enforcement agents" but presumably

5  includes ICE agents, Fraud Detection and National Security ("FDNS") inspectors, and

6  Department of Labor ("DOL") auditors, as well as officers from other federal agencies who

7  conduct enforcement actions that fall under the IWPA.

8  **32.**    Employer site visits are often conducted by U.S. Citizenship and Immigration

9  Services ("USCIS") Officers who may also fall under the purview of the IWPA, potentially

10  creating a problems for Plaintiff who may face USCIS visa petition denials or revocations for

11  foreign workers if Plaintiff blocks site visits under the IWPA.

12  **F.   Misprison of Felony - 18 U.S. Code § 4**

13  **33.**    18 U.S.C § 4 states:

14  Whoever, having knowledge of the actual commission of a felony cognizable
   by a court of the United States, conceals and does not as soon as possible
15  make known the same to some judge or other person in civil or military
   authority under the United States, shall be fined under this title or imprisoned
16  not more than three years, or both.

17

18  **34.**    Under federal law it is a felony to for Plaintiff (1) to assist an alien whom Plaintiff

19  should reasonably know is illegally in the U.S. or who lacks employment authorization, (2)

20  transport an illegal alien, (3) shelter an illegal alien, (4) assist an illegal alien to obtain

21  employment,  (5) encourage an illegal alien to remain in the U.S., by referring him to an

22  employer, (6) act as employer or agent for an employer in any way, or (7) knowingly assist an

23  illegal alien due to personal convictions.

24  **35.**    Based on the IWPA, an employer who discovers an illegal alien employee and

25  notifies federal authorities of said fact, could be prosecuted under the IWPA.

26  **G.   Plaintiff is a Private Employer**

27  **36.**    Plaintiff, is a private employer and operates a private business in the State of

28  California. After Plaintiff learned of the plight of thousands of unemployed veterans Plaintiff

1  began building a business called NAMAC, with the mission of providing quality jobs to veterans
2  who were unemployed.

3      **37.**    NAMAC is an acronym for "NAVY, ARMY, MARINES, AIR FORCE and
4  COAST GUARD.

5      **38.**    ICE targets businesses with a high percentage of illegal aliens.

6      **39.**    One of the core businesses of NAMAC is in the retail food sector business.
7  Because the retail food sector employs a high percentage of illegal aliens its highly probable that
8  ICE will target NAMAC for a sweep wherein ICE will require that Plaintiff provide information
9  to ICE that is in contradiction with the IWPA.

10      **40.**    Violations of federal law can subject a person to arrest, incarceration, and fines.

11      **41.**    The IWPA doesn't provide any protection or defense for Plaintiff if ICE decides
12  to arrest, charge, incarcerate, fine or impose a penalty against Plaintiff for IWPA compliance.

13      **42.**    The IWPA makes no distinction between legal and illegal employees.

14      **43.**    Plaintiff has contacted the office of the Attorney General of the State of California
15  to ask what protection the Attorney General of the State of California will provide to Plaintiff if
16  Plaintiff is arrested by ICE for complying with the IWPA.  The office of the Attorney General of
17  the State of California informed Plaintiff that it will not provide any protection.

18      **44.**    If Plaintiff were to comply with Plaintiff's understanding of the IWPA and ICE
19  agents were to arrest and charge Plaintiff with federal crimes, the State of California would sit
20  idly by and do nothing to prevent Plaintiff's life, business, livelihood and liberty from being
21  irreparably harmed and or destroyed.

22      **45.**    If Plaintiff complies with ICE or other federal agents in their normal course of
23  business in the State of California, Becerra has clearly indicated a threat of prosecution against
24  Plaintiff by and through Becerra's public decree.

25      **46.**    Becerra will prosecute Plaintiff for complying with Federal law where Becerra
26  believes it violates the IWPA thus causing Plaintiff's life and business to be effectively destroyed
27  by said compliance, yet Becerra will sit idly by and do nothing if Plaintiff is arrested by federal
28  authorities for a violation of federal law while Plaintiff is trying to comply with the IWPA.

1    **47.**    The IWPA prohibits California employers from allowing immigration

2    enforcement agents to enter any nonpublic areas of a workplace without a judicial warrant.

3    However, an employer may permit an agent to enter a nonpublic area (where employees are not

4    present) for purposes of verifying whether the agent has a judicial warrant.

5    **48.**    If an illegal alien were in a nonpublic area and Plaintiff prevented federal agents

6    from entering said area, Plaintiff could be charged with any number of federal violations for

7    violation of 18 U.S. Code § 4.

8    ## FIRST CAUSE OF ACTION

9    ### Article VI, Paragraph 2 of the United States Constitution

10   ### (Violation of the Supremacy Clause of the United States Constitution)

11   **49.**    Plaintiff hereby incorporates by reference all paragraphs.

12   **50.**    Article VI, Paragraph 2 of the U.S. Constitution is commonly referred to as the

13   Supremacy Clause. It establishes that the federal constitution, and federal law generally, take

14   precedence over state laws, and even state constitutions. It prohibits states from interfering with

15   the federal government's exercise of its constitutional powers, and from assuming any functions

16   that are exclusively entrusted to the federal government.

17   **51.**    The Supremacy Clause of the United States Constitution (Article VI, Clause 2)

18   establishes that the Constitution, federal laws made pursuant to it, and treaties made under its

19   authority, constitute the supreme law of the land, state laws are subordinate to federal law.

20   **52.**    Federal law comprises more than 20,000 pages of text.

21   **53.**    According to federal authorities, ignorance of the law, is no excuse. "Every man

22   is presumed to know the law," says a long-established legal aphorism. And if you are charged

23   with a crime, you would be well advised to rely on some other defense than "I had no idea that

24   was illegal."

25   **54.**    If you walk down the sidewalk, pick up a pretty feather, and take it home, you

26   could be a felon — if it happens to be a bald eagle feather. Bald eagles are plentiful now, and

27   were taken off the endangered species list years ago, but the federal law making possession of

28   them a crime for most people is still on the books, and federal agents are even infiltrating some

1   Native-American powwows in order to find and arrest people. (And feathers from lesser-known

2   birds, like the red-tailed hawk are also covered). Other examples abound, from getting lost in a

3   storm and snowmobiling on the wrong bit of federal land, to diverting storm sewer water around

4   a building.

5   **55.**     In 1997 three-time Indy 500 winner Bobby Unser ("Unser") was convicted of a

6   federal crime that exposed him to a $5,000 fine and a six month prison sentence. What did Unser

7   do that so angered the federal government? He got lost in a blizzard. Bobby Unser went through

8   a "harrowing, life-threatening" experience when he was lost for two days in Colorado's back

9   country during a blizzard, a federal judge said before convicting the three-time Indy 500 winner

10   of illegally driving his snowmobile in a federal wilderness area.

11   **56.**     "Regulatory crimes" are incredibly numerous and a category that is growing

12   quickly. They are the ones likely to trap unwary individuals into being felons without knowing it.

13   That is why Michael Cottone, in a Tennessee Law Review article, suggests that maybe the old

14   presumption that individuals know the law is outdated, unfair and maybe even unconstitutional.

15   "Tellingly," he writes, "no exact count of the number of federal statutes that impose criminal

16   sanctions has ever been given, but estimates from the last 15 years range from 3,600 to

17   approximately 4,500." Meanwhile, according to congressional testimony, the number of federal

18   regulations (enacted by administrative agencies under loose authority from Congress) carrying

19   criminal penalties may be as many as 300,000.

20   **57.**     Abbie Schoenwetter spent five years in prison for "smuggling" lobsters into the

21   U.S. in violation of Honduran fishing regulations, despite the fact that none of the regulations

22   were valid at the time.

23   **58.**     The federal "honest services" fraud statute is a law that criminalizes depriving

24   "another of the intangible right of honest services," whatever that means. Violations could be

25   punished by up to 20 years in prison. It had been used to charge thousands of individuals across

26   the socioeconomic spectrum until all nine justices of the Supreme Court ruled in a set of three

27   cases in that the statute was unconstitutionally vague.

28   **59.**     Georgia Thompson, a Wisconsin civil servant, was one such victim. Thompson

was charged with "honest services" fraud after she awarded a state contract for travel services to the bidder with the best prices and second-best service rating. Because the "honest services" statute was so flawed, federal prosecutors were able to build their theory of Thompson's guilt on allegations that she "made her supervisors look good" and thus "improved her job security." Not only did a jury convict Thompson under this preposterous theory, a federal judge denied her motion to overturn the jury's verdict and sentenced her to four years in federal prison. A federal court of appeals eventually reversed her conviction, but by then Thompson had lost her job, her house, and her good name. She had been driven into bankruptcy and served four months in a federal penitentiary. Most federal officials have never met an overbroad law they didn't like. They don't see any problem with the "honest services" statute or, for that matter, any other examples of a broad or vague law, because it gives them discretion to act as they see fit.

**60.** In the face of daunting federal law and the penalties attached for violating federal law, Becerra, has stated that he will prosecute Plaintiff for violating the IWPA, while at the same time refusing to provide protection for Plaintiff if Plaintiff, while attempting to comply with the IWPA runs afoul of a federal law.

**61.** Plaintiff prays for judgment against Defendants, as more fully set forth below.

## SECOND CAUSE OF ACTION

### PESONAL INJURY

**62.** Plaintiff hereby incorporates by reference all paragraphs.

**63.** Plaintiff has a duty to mitigate damages or potential damages.

**64.** Due to the IWPA, Plaintiff, out of an abundance of caution to avoid violating federal law, has stopped NAMAC.

**65.** Plaintiff prays for judgment against Defendants, as more fully set forth below.

## COSTS AND ATTORNEY FEES

**66.** Pursuant to 42 U.S.C. § 1988, Plaintiff seeks an award of their costs, including reasonable attorneys' fees, incurred in the litigation of this case.

//

//

1    **WHEREFORE**, Plaintiff prays judgment against the defendants and each of them as follows

2    according to proof.

3      1. Declare that the Immigrant Worker Protection Act violates Article VI, Paragraph 2 of

4         the U.S. Constitution, more commonly referred to as the Supremacy Clause.

5      2. Permanently enjoin Defendant Becerra from enforcing or giving any effect to the

6         Immigrant Worker Protection Act.

7      3. Permanently enjoin Defendant State of California or any of its agents from enforcing

8         or giving any effect to the Immigrant Worker Protection Act.

9      4. Compensatory damages;

10      5. Injunctive relief;

11      6. Wage loss damages;

12      7. Loss of earning capacity;

13      8. General damages;

14      9. For costs of suit; and

15      10. For such other and further relief as this Court deems just and proper.

16

17

18                  **<u>VERIFICATION AND DEMAND FOR JURY TRIAL</u>**

19      I, the undersigned, am the plaintiff in this matter and make this verification and demand

20    for jury trial; I have read the foregoing complaint, know the contents thereof, and from

21    information and belief, believe the same to be true. I verify under penalty of perjury that the

22    foregoing is true and correct. Furthermore, I demand a jury trial in this action.

23

24    DATED: February 9, 2018 

25                      John Brosnan

26

27

28

# EXHIBIT 1

CHAPTER 492

An act to add Sections 7285.1, 7285.2, and 7285.3 to the Government Code, and to add Sections 90.2 and 1019.2 to the Labor Code, relating to employment regulation.

[ Approved by Governor October 05, 2017. Filed with Secretary of State October 05, 2017. ]

LEGISLATIVE COUNSEL'S DIGEST

AB 450, Chiu. Employment regulation: immigration worksite enforcement actions.
Existing law prohibits an employer or other person or entity from engaging in, or to directing another person or entity to engage in, unfair immigration-related practices against a person for exercising specified rights. Existing law defines unfair immigration-related practices for these purposes. Existing law grants the Labor Commissioner access to places of labor and authorizes the commissioner to conduct investigations and prosecute actions in relation to the prescribed duties of the office. Existing law creates the Labor Enforcement and Compliance Fund, moneys in which, upon appropriation by the Legislature, are available to support the Division of Labor Standards Enforcement.
This bill would impose various requirements on public and private employers with regard to federal immigration agency immigration worksite enforcement actions. Except as otherwise required by federal law, the bill would prohibit an employer or other person acting on the employer's behalf from providing voluntary consent to an immigration enforcement agent to enter nonpublic areas of a place of labor unless the agent provides a judicial warrant, except as specified. Except as required by federal law, the bill would prohibit an employer or other person acting on the employer's behalf from providing voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or court order, subject to a specified exception. The bill would grant the Labor Commissioner or the Attorney General the exclusive authority to enforce these provisions and would require that any penalty recovered be deposited in the Labor Enforcement and Compliance Fund. The bill would prescribe penalties for failure to satisfy the prohibitions described above of $2,000 up to $5,000 for a first violation and $5,000 up to $10,000 for each subsequent violation, as defined. The bill would specify circumstances for which penalties do not apply.
The bill, except as required by federal law, would require an employer to provide a current employee notice containing specified information, by posting in the language the employer normally uses to communicate employment information, of an inspection of I-9 Employment Eligibility Verification forms or other employment records conducted by an immigration agency within 72 hours of receiving the federal notice of inspection. The bill would require an employer, upon reasonable request, to

provide an affected employee a copy of the notice of inspection of I-9 Employment Eligibility Verification forms. The bill would require the Labor Commissioner, by July 1, 2018, to create a template for these purposes and make it available, as specified. The bill would require an employer to provide to an affected current employee, and to the employee's authorized representative, if any, a copy of the written immigration agency notice that provides for the inspection results and written notice of the obligations of the employer and the affected employee arising from the action, as specified. The bill would define affected employee for these purposes. The bill would prescribe penalties for failure to provide the notices of $2,000 up to $5,000 for a first violation and $5,000 up to $10,000 for each subsequent violation, except as specified, to be collected by the Labor Commissioner.

Except as required by federal law, the bill would prohibit an employer from reverifying the employment eligibility of a current employee at a time or in a manner not required by specified federal law. The bill would prescribe a penalty of up to $10,000 for a violation of this prohibition to be recoverable by the Labor Commissioner.

DIGEST KEY

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

BILL TEXT

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:


SECTION 1. Section 7285.1 is added to the Government Code, to read:

7285.1. (a) Except as otherwise required by federal law, an employer, or a person acting on behalf of the employer, shall not provide voluntary consent to an immigration enforcement agent to enter any nonpublic areas of a place of labor. This section does not apply if the immigration enforcement agent provides a judicial warrant.

(b) An employer who violates subdivision (a) shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. If a court finds that an immigration enforcement agent was permitted to enter a nonpublic area of a place of labor without the consent of the employer or other person in control of the place of labor, the civil penalty shall not apply. "Violation" means each incident when it is found that subdivision (a) was violated without reference to the number of employees, the number of immigration enforcement agents involved in the incident, or the number of locations affected in a day.

(c) This section shall not preclude an employer or person acting on behalf of an employer from taking the immigration enforcement agent to a nonpublic area, where employees are not present, for the purpose of verifying whether the immigration enforcement agent has a judicial warrant, provided no consent to search nonpublic areas is given in the process.

(d) The exclusive authority to enforce this section is granted to the Labor Commissioner or the Attorney General and enforcement shall be through civil action. Any penalty recovered shall be

deposited in the Labor Enforcement and Compliance Fund.

(e) This section applies to public and private employers.

SEC. 2. Section 7285.2 is added to the Government Code, to read:

7285.2. (a) (1) Except as otherwise required by federal law, and except as provided in paragraph (2), an employer, or a person acting on behalf of the employer, shall not provide voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or judicial warrant. This section does not prohibit an employer, or person acting on behalf of an employer, from challenging the validity of a subpoena or judicial warrant in a federal district court.

(2) This subdivision shall not apply to I-9 Employment Eligibility Verification forms and other documents for which a Notice of Inspection has been provided to the employer.

(b) An employer who violates subdivision (a) shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. If a court finds that an immigration enforcement agent was permitted to access, review, or obtain the employer's employee records without the consent of the employer or other person in control of the place of labor, the civil penalty shall not apply. "Violation" means each incident when it is found that subdivision (a) was violated without reference to the number of employees, the number of immigration enforcement agents involved in the incident, or the number of employee records accessed, reviewed, or obtained.

(c) The exclusive authority to enforce this section is granted to the Labor Commissioner or the Attorney General and enforcement shall be through civil action. Any penalty recovered shall be deposited in the Labor Enforcement and Compliance Fund.

(d) This section applies to public and private employers.

SEC. 3. Section 7285.3 is added to the Government Code, to read:

7285.3. In accordance with state and federal law, nothing in this chapter shall be interpreted, construed, or applied to restrict or limit an employer's compliance with a memorandum of understanding governing the use of the federal E-Verify system.

SEC. 4. Section 90.2 is added to the Labor Code, to read:

90.2. (a) (1) Except as otherwise required by federal law, an employer shall provide a notice to each current employee, by posting in the language the employer normally uses to communicate employment-related information to the employee, of any inspections of I-9 Employment Eligibility Verification forms or other employment records conducted by an immigration agency within 72 hours of receiving notice of the inspection. Written notice shall also be given within 72 hours to the employee's authorized representative, if any. The posted notice shall contain the following information:

(A) The name of the immigration agency conducting the inspections of I-9 Employment Eligibility Verification forms or other employment records.

(B) The date that the employer received notice of the inspection.

(C) The nature of the inspection to the extent known.

(D) A copy of the Notice of Inspection of I-9 Employment Eligibility Verification forms for the inspection to be conducted.

(2) On or before July 1, 2018, the Labor Commissioner shall develop a template posting that employers may use to comply with the requirements of subdivision (a) to inform employees of a notice of inspection to be conducted of I-9 Employment Eligibility Verification forms or other employment records conducted by an immigration agency. The posting shall be available on the Labor Commissioner's Internet Web site so that it is accessible to any employer.

(3) An employer, upon reasonable request, shall provide an affected employee a copy of the Notice of Inspection of I-9 Employment Eligibility Verification forms.

(b) (1) Except as otherwise required by federal law, an employer shall provide to each current affected employee, and to the employee's authorized representative, if any, a copy of the written immigration agency notice that provides the results of the inspection of I-9 Employment Eligibility Verification forms or other employment records within 72 hours of its receipt of the notice. Within 72 hours of its receipt of this notice, the employer shall also provide to each affected employee, and to the affected employee's authorized representative, if any, written notice of the obligations of the employer and the affected employee arising from the results of the inspection of I-9 Employment Eligibility Verification forms or other employment records. The notice shall relate to the affected employee only and shall be delivered by hand at the workplace if possible and, if hand delivery is not possible, by mail and email, if the email address of the employee is known, and to the employee's authorized representative. The notice shall contain the following information:

(A) A description of any and all deficiencies or other items identified in the written immigration inspection results notice related to the affected employee.

(B) The time period for correcting any potential deficiencies identified by the immigration agency.

(C) The time and date of any meeting with the employer to correct any identified deficiencies.

(D) Notice that the employee has the right to representation during any meeting scheduled with the employer.

(2) For purposes of this subdivision, an "affected employee" is an employee identified by the immigration agency inspection results to be an employee who may lack work authorization, or an employee whose work authorization documents have been identified by the immigration agency inspection to have deficiencies.

(c) An employer who fails to provide the notices required by this section shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. This section does not require a penalty to be imposed upon an employer or person who fails to provide notice to an employee at the express and specific direction or request of the federal government. The penalty shall be recoverable by the Labor Commissioner.

(d) For purposes of this section, an "employee's authorized representative" means an exclusive collective bargaining representative.

(e) This section applies to public and private employers.

(f) In accordance with state and federal law, nothing in this chapter shall be interpreted, construed, or applied to restrict or limit an employer's compliance with a memorandum of understanding governing the use of the federal E-Verify system.

SEC. 5. Section 1019.2 is added to the Labor Code, to read:

1019.2. (a) Except as otherwise required by federal law, a public or private employer, or a person acting on behalf of a public or private employer, shall not reverify the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8 of the United States Code.

(b) (1) Except as provided in paragraph (2), an employer who violates subdivision (a) shall be subject to a civil penalty of up to ten thousand dollars ($10,000). The penalty shall be recoverable by the Labor Commissioner.

(2) The actions of an employer that violate subdivision (a) and result in a civil penalty under paragraph (1) shall not also form the basis for liability or penalty under Section 1019.1.

(c) In accordance with state and federal law, nothing in this chapter shall be interpreted, construed, or applied to restrict or limit an employer's compliance with a memorandum of understanding governing the use of the federal E-Verify system.

SEC. 6. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

# EXHIBIT 2

TITLE 1. GENERAL [100 - 7914] ( Title 1 enacted by Stats. 1943, Ch. 134. )

DIVISION 7. MISCELLANEOUS [6000 - 7599.2] ( Division 7 enacted by Stats. 1943, Ch. 134. )

CHAPTER 17.3. Enforcement Actions [7285 - 7285.3] ( Chapter 17.3 added by Stats. 2002, Ch. 1071, Sec. 2. )

7285.
  The Legislature finds and declares the following:

(a) All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

(b) For purposes of enforcing state labor, employment, civil rights, consumer protection, and housing laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status unless the person seeking to make the inquiry has shown by clear and convincing evidence that the inquiry is necessary in order to comply with federal immigration law.

(c) The provisions of this section are declaratory of existing law.

(d) The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

(Amended by Stats. 2017, Ch. 160, Sec. 2. (AB 1690) Effective January 1, 2018.)

7285.1.
  (a) Except as otherwise required by federal law, an employer, or a person acting on behalf of the employer, shall not provide voluntary consent to an immigration enforcement agent to enter any nonpublic areas of a place of labor. This section does not apply if the immigration enforcement agent provides a judicial warrant.

(b) An employer who violates subdivision (a) shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. If a court finds that an immigration enforcement agent was permitted to enter a nonpublic area of a place of labor without the consent of the employer or other person in control of the place of labor, the civil penalty shall not apply. "Violation" means each incident when it is found that subdivision (a) was violated without reference to the number of employees, the number of immigration enforcement agents involved in the incident, or the number of locations affected in a day.

(c) This section shall not preclude an employer or person acting on behalf of an employer from taking the immigration enforcement agent to a nonpublic area, where employees are not present, for the purpose of verifying whether the immigration enforcement agent has a judicial warrant, provided no consent to search nonpublic areas is given in the process.

(d) The exclusive authority to enforce this section is granted to the Labor Commissioner or the Attorney General and enforcement shall be through civil action. Any penalty recovered shall be deposited in the Labor Enforcement and Compliance Fund.

(e) This section applies to public and private employers.

(Added by Stats. 2017, Ch. 492, Sec. 1. (AB 450) Effective January 1, 2018.)

7285.2.
  (a) (1) Except as otherwise required by federal law, and except as provided in paragraph (2), an employer, or a person acting on behalf of the employer, shall not provide voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or judicial warrant. This section does not prohibit an employer, or person acting on behalf of an employer, from challenging the validity of a subpoena or judicial warrant in a federal district court.

(2) This subdivision shall not apply to I-9 Employment Eligibility Verification forms and other documents for which a Notice of Inspection has been provided to the employer.

(b) An employer who violates subdivision (a) shall be subject to a civil penalty of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation. If a court finds that an immigration enforcement agent was permitted to access, review, or obtain the employer's employee records without the consent of the employer or other person in control of the place of labor, the civil penalty shall not apply. "Violation" means each incident when it is found that subdivision (a) was violated without reference to the number of employees, the number of immigration enforcement agents involved in the incident, or the number of employee records accessed, reviewed, or obtained.

(c) The exclusive authority to enforce this section is granted to the Labor Commissioner or the Attorney General and enforcement shall be through civil action. Any penalty recovered shall be deposited in the Labor Enforcement and Compliance Fund.

(d) This section applies to public and private employers.